IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| DAVID MICHAEL ESLICK,<br><br>Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD;<br>ATTORNEY GENERAL OF<br>THE STATE OF MONTANA,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cause No. CV 12-107-M-DLC-JCL<br><br><br><br>FINDINGS AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE |

On June 20, 2012, Petitioner David Michael Eslick filed this action for a writ of habeas corpus under 28 U.S.C. § 2254. He is a state prisoner proceeding pro se.

On July 20, 2012, Respondent ("the State") was ordered to file documents from the state court record. It complied on September 7, 2012.

## I. Preliminary Screening

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it

plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.*

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court,* 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). Consideration under Rule 4 "may properly encompass any exhibits attached to the petition, including, but not limited to, transcripts, sentencing records, and copies of state court opinions. The judge may order any of these items for his consideration if they are not yet included with the petition." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases. "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." *Id.*; *see also* 28 U.S.C. § 2243.

## II. Background

In 2003, Eslick was convicted of burglary, sexual assault, partner or family member assault, and criminal mischief. He was sentenced to twenty years for burglary and shorter terms on the other convictions, with all time suspended.

In 2010, the State filed a petition to revoke his suspended sentence for burglary. The petition alleged that, on August 19, 2010, Eslick was arrested on a

misdemeanor charge of partner or family member assault. Pet. Aff. (doc. 8-2 at 4). A hearing was held on December 3, 2010. Eslick, his wife Lori, and Missoula County Deputy Newsom testified on the petition to revoke. Eslick's probation officer, Rich Miller, made a sentencing recommendation.

Lori admitted she hit Eslick in the chest when he slammed a cup down on the counter top so hard it broke. Hr'g Tr. at 33:16-34:14, 66:17-68:7. Eslick followed Lori as she walked away from him. He picked up her purse and threw its contents out on the floor, in the process breaking the watchband attached to the purse. She gathered up the papers and contents of her purse and eventually concluded that Eslick had calmed down. About twenty minutes after Lori hit Eslick in the chest, she went into the bedroom to get her shoes, intending to take her watch to Wal-Mart to get it fixed and to clear out of the house for a while. *Id.* at 34:20-35:10, 68:9-70:15.

According to Lori, as she came out of the bedroom, Eslick pushed her up against the wall, pinning her with his arm and grasping her neck with his hand. She "had the thought of . . . I'm gone." When he let her go, he started crying, apologized, and said he did not want to lose her. He also threw a folding chair. She left the house and got into her car. He tried to prevent her from leaving by sitting on the back bumper, but eventually he gave up. She went to Wal-Mart, texted a friend, then talked to Eslick on the phone for about 45 minutes. She returned home sometime

after midnight. Hr'g Tr. at 35:10-40:16.

Lori stayed with Eslick for another month. During that time, Eslick told Lori he wanted to go to counseling but she had to come with him; the counselor later told her that was not true. He also interrupted her phone conversations with friends to prevent her from talking to other people about him. On August 19, she decided to leave. She went to her son's house and, from there, called the Sheriff's Office. Deputy Newsom responded. He arrived at about 10:45 p.m. and left at about 12:15 a.m. Eslick called Lori 58 times between 9:05 p.m. and 12:43 a.m., most while she was talking to Newsom. *Id.* at 42:8-46:10; *see also id.* at 4:14-5:1, 6:15-20.

Eslick testified that Lori knocked the breath out of him when she hit him. He insisted he was frustrated but not angry throughout the course of the argument. He said he sat on the bumper of her car to prevent Lori from leaving because she was angry and he did not want her to drive when she was so upset. *Id.* at 66:6-13, 67:17-68:14, 79:2-11, 72:20-23. Eslick was impeached with "quite a history of being a fairly convincing liar," including representing himself to be a psychological counselor, a sports psychologist, a medical doctor, and a licensed police trainer in the area of explosives. He might also have "told a story about saving [his] buddy's life in a battle in Vietnam, and a bullet went through [his buddy] and lodged in [Eslick's] own back," but Eslick could neither confirm nor deny for the prosecutor whether he

had told this story: "That's a classified mission, ma'am." *Id.* at 75:20-76:18.

The trial court found the petition was established by a preponderance of the evidence. *Id.* at 81:7-10. The suspended sentence was revoked and reimposed, with no credit for time served on supervision. Eslick will be eligible for parole after serving five years in custody. Judgment (doc. 8-5) at 1-4; Mont. Code Ann. § 46-23-201(3) (2009).

Eslick appealed. Counsel filed an *Anders* brief. After it "independently reviewed the record," the Montana Supreme Court concluded "an appeal in this case would be wholly frivolous." Order at 1, *State v. Eslick*, No. DA 11-0080 (Mont. Sept. 6, 2011) (doc. 8-8). Eslick filed a timely petition for rehearing. It was denied on October 25, 2011.

Eslick filed his federal habeas petition on June 20, 2012.

## III. Claims and Analysis

Although some or all of Eslick's claims may be procedurally barred, it is clear that he is not entitled to relief on the merits of his claims. Accordingly, it is more efficient to proceed to the merits. *See, e.g.*, 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983).

Eslick asserts that appellate counsel Sarah Rosario violated his right to the effective assistance of counsel by filing an *Anders* brief and the Montana Supreme Court violated his right to due process in its handling of his direct appeal. Pet. (doc. 1) at 5-11, 12-17. The *Anders* procedure was established by the United States Supreme Court, *see Anders v. California*, 386 U.S. 738 (1967), and is codified at Mont. Code Ann. § 46-8-103(2) (2009). Counsel did what *Anders*, 386 U.S. at 744, and the state statute required her to do. The Montana Supreme Court did what *Anders*, 386 U.S. at 744, and the state statute required it to do. Although Eslick complains he was not allowed to proceed pro se, he was ordered to – and did – submit a brief in response to counsel's motion. He stated that counsel's *Anders* brief accurately stated his position. *See* Appellant's Resp. to Counsel's Mot. to Withdraw and *Anders* Brief in Support Thereof at 3-5, 8, *State v. Eslick*, No. DA 11-0080 (Mont. filed Aug. 25, 2011), *available at* supremecourtdocket.mt.gov (accessed Dec. 5, 2012). Eslick was not entitled to new counsel unless the Montana Supreme Court found a nonfrivolous issue for appeal. It did not. Both counsel and the Montana Supreme Court followed binding federal law. There was no requirement and no need for an evidentiary hearing on counsel's motion to withdraw or on her effectiveness. This claim should be denied.

Eslick contends that the record of his case "clearly reflects" that his wife was

"a willing participant in the subject matter argument" on July 19, 2010, was "the primary aggressor," was so unafraid of him that she returned home and stayed for a month, and used her son's "influence" as a law enforcement officer to have Deputy Newsom come to his home and take a report of a complaint from his mother. Pet. at 11. Eslick also complains that the trial court "assumed a bias[ed] position and made inferences that [were] without authority, to make and simply rule that 'one persons word is more credible than another[']s." *Id.* at 12. But there is no violation of federal constitutional law in this scenario. Listening to witnesses, assessing credibility, and ruling accordingly is what judges do. The record does not "clearly reflect" that Eslick's version of events was true. The testimony of the State's witnesses was sufficient to support the trial court's findings by a preponderance of the evidence, Mont. Code Ann. § 46-18-203(6)(a), and Eslick's testimony was not credible. This claim should be denied.

Eslick also alleges that his sentence was wrongful and unlawful. Pet. at 12. The trial court was authorized to decide whether to give credit for time spent on supervision. It stated its reasons for declining to do so in the judgment, and it awarded credit for time served in custody. Mont. Code Ann. § 46-18-203(7)(b); Judgment (doc. 8-5) at 2-4. Eslick is also eligible for parole after he serves five years in prison. *Id.* § -23-201(3). Although Eslick claims he was a "model citizen" during

the period of his supervision, Pet. at 18, the record shows he continued, with Lori Eslick, a pattern of financially abusive relationships with women, reinforced by physical abuse, *e.g.*, Hr'g Tr. at 28:12-19, 46:22-47:11, 82:7-23, 83:10-84:4. This claim should be denied.

**IV. Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Eslick disagrees with the trial court's interpretation of the testimony at the revocation hearing, with its disposition and sentence, and with counsel's filing and the Montana Supreme Court's acceptance of an *Anders* brief on appeal. The record, however, shows no error of federal or, for that matter, state law. Eslick's claims do not support an inference that he was deprived of any constitutional right. The petition

lacks any substance. A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

1. The Petition (doc. 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Eslick may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. If Eslick files objections, he must itemize each factual finding to which objection is made and must identify the evidence in the record he relies on to contradict that finding; and he must itemize each recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation. Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude Eslick from relying on that fact or argument at a later stage of the proceeding. A district

judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Eslick must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of his case without notice to him.

DATED this 6th day of December, 2012.

Jeremiah C. Lynch
United States Magistrate Judge